IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**EOD**

01/22/2020

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ALLEN LYNN DAVIDSON** | § | Case No. 18-40326 |
| xxx-xx-5278 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| TRANS GLOBAL AUTO | § | |
| LOGISTICS, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 18-4042 |
| | § | |
| ALLEN LYNN DAVIDSON | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

Now before the Court in the above-referenced adversary proceeding is the

Amended Motion for Summary Judgment (the "Motion") filed by the Plaintiff, Trans

Global Auto Logistics, Inc. ("Plaintiff"), on August 21, 2019.   Despite proper notice, no

response in opposition to the Motion was filed by the Defendant, Allen Lynn Davidson

("Defendant" or "Davidson").   Upon due consideration of the pleadings, the proper

summary judgment evidence submitted by the Plaintiff, and the relevant legal authorities,

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

the Court concludes that the Plaintiff has demonstrated that there is no genuine issue as to

any material fact and that it is entitled to judgment as a matter of law that the debt owed

to it by the Defendant evidenced by the default judgment issued by the 296th Judicial

District Court in and for Collin County, Texas, is nondischargeable under § 523(a)(2)(A).

This memorandum of decision disposes of all issues before the Court.[2]

### Factual and Procedural Background [3]

The Plaintiff is an industrial shipping and cargo transportation company which

owns and operates a commercial warehouse located in Arlington, Texas.  At the time of

the transaction between the parties, Davidson owned a small retail cleaning service

known as Good Guys Remodel.[4]  On or about March 21, 2017, the parties entered into a

contract whereby Davidson agreed to clean, restore, and refurbish certain aspects of the

Plaintiff's facility which included a powerwash and painting of the exterior of Plaintiff's

building, re-striping of parking lot lines, and an upgrading of the facility's lighting

system.  The Plaintiff paid $26,000 in advance to the Defendant for such services.  Under

---

[2]  This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §§ 1334 and 157(a). The Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3]  The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims asserted in this case. This section is not intended to resolve any disputed or contested facts between the parties.

[4]  Debtor-Defendant's *Voluntary Petition* [dkt #1 in case no. 18-40326] at ¶ 4.

the agreement, Davidson was solely responsible for furnishing all labor, equipment, materials and services necessary to perform the contract.

The Defendant completed the powerwash and cleaning of the Plaintiff's warehouse within a month. However, consistent delays occurred with regard to the Defendant's completion of the lighting components of the project, which constituted the substantial portion of the contract. Upon the Plaintiff's inquiry occurring in mid-April 2017, the Defendant first informed the Plaintiff that the lighting upgrades had been ordered, and then subsequently were backordered. Eventually, in June 2017, the Defendant told the Plaintiff that the lighting order had been canceled by his vendor due to an inability to procure the required products. After further inquiries from the Plaintiff were ignored, the Plaintiff demanded a refund of $20,626 of the $26,000 which had been previously paid. The Defendant failed to tender any part of the requested refund.

On June 27, 2017, the Plaintiff filed a state court petition against the Defendant before the 296th Judicial District Court in and for Collin County, Texas, under cause no. 296-02931-2017 (the "State Court Litigation"). The petition sought relief in the form of monetary damages under various theories of liability, including fraud and liability under the Texas Deceptive Trade and Practices Act. The Plaintiff obtained a default judgment against the Defendant in the State Court Litigation in the principal amount of $20,626, together with $ 4,446.44 in attorney's fees, treble damages in the amount of $41,252, and

post-judgment interest (the "State Court Judgment").[5]  No appeal was taken following the

entry of the State Court Judgment.

A few months later, on February 19, 2018, Davidson filed his voluntary petition

for relief under Chapter 7 of the Bankruptcy Code in this Court along with accompanying

Schedules and Statements of Financial Affairs. On that same day, Davidson listed the

Plaintiff as an unsecured judgment creditor holding a disputed claim in the amount of

$32,000 within his Schedules.  On April 25, 2018, the Plaintiff initiated the present

adversary by timely filing a complaint seeking to except its debt from the scope of any

discharge otherwise granted in favor of the Defendant.

Both the summons and complaint were properly served upon the Defendant on

April 26, 2018.  The Defendant thereafter appeared *pro se* and filed a general denial to the

complaint. On May 31, 2018, this Court issued an *Order Directing Defendant to File*

*First Amended Answer* with specific instructions to resubmit his answer in accordance

with the Federal Rules of Civil Procedure.[6]  After a series of events in which the

Defendant originally failed to comply with the Court's directive, he subsequently

---

[5] The Defendant previously admitted the existence of this judgment debt arising from the State Court Litigation.  *See Defendant's Original Answer* [dkt #25] at ¶ 9;  and Debtor-Defendant's *Schedule E/F* [dkt #1 in case no. 18-40326]  at ¶ 4.9.

[6] *See* dkt # 12.  The Court directed the *pro se* defendant to specifically admit or deny each allegation referenced by the Plaintiff's Complaint.  This order form is intended to assist *pro se* litigants with respect to the filings in accordance with the Federal Rules of Civil Procedure. In that form, this Court directed the Defendant to provide an otherwise appropriate response complete with direct and specific responses or risk the allegations cited by the Complaint being deemed as admitted.

appeared with an attorney and answered the complaint. In order to allow the matter to be

determined on the merits, the Court set aside all prior defaults of the Defendant[7] and

allowed the parties to proceed to discovery. A management conference was subsequently

conducted with appropriate notice and, with the agreement of the parties, a scheduling

order outlining discovery deadlines and other dates relevant to the preparation of the

complaint for trial was entered on April 9, 2019.[8]

On May 16, 2019, the Plaintiff served its first discovery requests upon the

Defendant which included Plaintiff's First Request for Admissions,[9] First Set of

Interrogatories, and First Request for Production of Documents. Despite pledging his full

participation in this adversary proceeding after his prior defaults had been reversed, the

Defendant again failed to cooperate in this process by seeking to delay the deadline to

tender his discovery responses to the Plaintiff. Despite two agreed extensions, the

Defendant has wholly failed to tender any responses to the Plaintiff's various discovery

requests.

Thus, in light of the Defendant's failure to respond, all of the asserted facts

contained in Plaintiff's Requests for Admissions are deemed admitted pursuant to Fed. R.

---

[7] Dkt # 21.

[8] Dkt # 29.

[9] Ex. A. to Plaintiff's *Amended Motion for Summary Judgment* [dkt #32].

Bankr. P. 7036.[10]  Among the relevant facts deemed admitted by the Defendant for the

purposes of the present proceeding are as follows:

(1)     Plaintiff paid Defendant $26,000 in March 2017 for painting
        the parking lot lines, power wash and paint of Plaintiff's
        exterior building, and purchase and replacement of office,
        warehouse and exterior lighting pursuant to a written proposal
        from Defendant;[11]

(2)     Defendant accepted and deposited the entirety of the
        $26,000;[12]

(3)     Defendant told the Plaintiff in an email that the lights required
        for the proposal were ordered and currently on back order;[13]

(4)     Defendant's statement that the lights required for the proposal
        were ordered and currently on back order was untrue when
        made;[14]

(5)     Defendant knew that his statement that the lights required for
        the proposal were ordered and currently on back order was

---

[10]  FED. R. BANKR. P. 7036, applying Rule 36 of the Federal Rules of Civil Procedure, provides,
in part:
> [a] matter is admitted unless, within 30 days after service of the request, or within such
> shorter or longer time as the court may allow or as the parties may agree to in writing,
> subject to Rule 29, the party to whom the request is directed serves upon the party
> requesting the admission a written answer or objection addressed to the matter, signed by
> the party or by the party's attorney.

FED. R. CIV. P. 36(a).  In the absence of a timely motion to withdraw or amend that is subsequently
granted, a fact deemed admitted pursuant to Rule 36 must be enforced against the defaulting party.
*Carney v. IRS*, 258 F.3d 415, 418 (5th Cir. 2001).

[11]  Admissions ## 5 and 6.

[12]  Admission # 6.

[13]  Admission # 7.

[14]  Admission # 8.

untrue when made;[15]

(6)    Upon inquiry by the Plaintiff regarding the delay, Defendant told the Plaintiff that the previous lighting order had been canceled due to the vendor's difficulty in filling the order;[16]

(7)    Defendant's statement that the previous lighting order had been canceled due to vendor difficulties was untrue when made;[17]

(8)    Defendant knew that his statement that the previous lighting order had been canceled due to vendor difficulties was untrue when made;[18]

(9)    Defendant never placed or submitted the lighting order for the Plaintiff;[19]

(10)    Defendant never paid for the lighting order for the Plaintiff's warehouse;[20]

(11)    Defendant never delivered to Plaintiff the lighting materials for its warehouse;[21]

(12)    If Defendant purchased any portion of the lighting materials for the warehouse, he kept, used or sold these materials, or the proceeds therefrom, for his own use;[22]

---

[15] Admission # 9.

[16] Admission # 10.

[17] Admission # 11.

[18] Admission # 12.

[19] Admission # 13.

[20] Admission # 14.

[21] Admission # 15.

[22] Admission # 16.

(13)    Defendant completed the power washing and cleaning of the Plaintiff's warehouse, but did not complete the remainder of the work outlined in the proposal;[23]

(14)    The value of the work [power washing and cleaning] Defendant completed at the Plaintiff's warehouse was around $5,374;[24]

(15)    The value of the work Defendant did not complete and materials that Plaintiff did not install at Plaintiff's warehouse was about $20,636;[25]

(16)    On or about June 2, 2017, the Plaintiff terminated the proposal and requested that Defendant cease all work at its warehouse;[26]

(17)    On or about June 2, 2017, Plaintiff demanded that Defendant remit the unused portion of the $26,000 deposit under the proposal, in the sum of $20,636.00;[27]

(18)    Defendant failed to remit any part of the unused portion of the $26,000;[28]

(19)    By retaining the unused portion of the $26,000 deposit, Defendant was paid for work it never performed for Plaintiff at its warehouse;[29]

---

[23]  Admission # 17.

[24]  Admissions ## 18 and 19.

[25]  Admissions ## 20 and 21.

[26]  Admissions ## 22 and 23.

[27]  Admission # 24.

[28]  Admission # 25.

[29]  Admission # 26.

(20)   Defendant did not segregate or separately account for the
$26,000 deposit paid by Plaintiff with funds for other
construction projects for other customers;[30]

(21)   Defendant commingled the $26,000 deposit paid by Plaintiff
with funds for other construction projects for other
customers;[31]

(22)   Defendant failed to separately account to Plaintiff for his uses
of the $26,000 deposit paid to him by Plaintiff;[32]

(23)   Defendant used the unused portion of the $26,000 deposit
paid by Plaintiff;[33]

(24)   Defendant never intended to perform the proposal with
Plaintiff as originally promised.[34]

The Plaintiff thereafter filed its present Amended Motion for Summary Judgment,

contending that the State Court Judgment should be rendered nondischargeable under

§ 523(a)(2)(A) or, in the alternative, § 523(a)(6).  In addition to the deemed admissions

under Rule 36, there is additional summary judgment evidence in support of the motion.

The Plaintiff's representative, Beverly Stark, previously tendered to the Court an affidavit

which provides additional evidentiary support for the facts upon which the complaint and

---

[30]  Admission # 27.

[31]  Admission # 28.

[32]  Admission # 29.

[33]  Admission # 30.

[34]  Admission # 32.

the summary judgment motion are based.[35]  Supplementary to the facts established in the

deemed admissions, Ms. Stark testified in her affidavit that it was the Defendant who had

insisted that all of the money required for the contract be paid upfront.[36]  She further

testified that the Defendant knew that his representation regarding the status of lighting

products was false and that he never intended to perform the contract as promised.[37]  She

supports that contention by the fact that, despite numerous requests, the Defendant never

provided a purchase order or any other documentation to evidence that the lights had ever

been ordered.[38]  The affidavit sets forth that, upon receipt of the Plaintiff's demand for a

return of the unused portion of the deposit, the Defendant immediately became

unresponsive, further supporting the contention that the Defendant "always intended to

keep the funds without purchasing the goods and providing the services he had agreed

---

[35]  This affidavit was originally tendered to the Court without objection in support of the
Plaintiff's Amended Motion for Judgment [dkt #15].  Because the affidavit is in the Court's record and is
highly germane to the issues presented, the Court exercises its discretion to consider it in this context
under the authority provided by Fed. R. Civ. P. 56(c)(3) which states:

> *Materials Not Cited.*  The court need consider only the cited materials, but it may
> consider other materials in the record.

Fed. R. Civ. P. 56.  *See also, Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x. 414, 419
(5th Cir. 2016).

[36]  Stark Affidavit at ¶ C.

[37]  *Id.* at ¶ D.

[38]  *Id.* at ¶ E.

**-10-**

would be provided."[39]  The Plaintiff initiated the State Court Litigation, contending that

the Defendant's conduct had violated the Texas Deceptive Trade Practices Act, that the

Defendant's fraudulent conduct was knowingly committed, and that the Plaintiff was

entitled to exemplary and additional damages.[40]  The affidavit affirms that the State Court

Litigation was concluded by the entry of a Default Judgment, but such entry occurred

only at the conclusion of an evidentiary hearing conducted by the state court at which the

Plaintiff had tendered evidence on all unliquidated damages which had been requested.[41]

The Default Judgment awarded the Plaintiff a judgment against the Defendant for the

total sum of $66,324.44, plus post-judgment interest on such amount at the rate of 5% per

---

[39] *Id.* at ¶ F.

[40] *Id.* at ¶ G and the referenced state court petition attached thereto as Ex. 1.

[41] The evidentiary hearing was required under Texas law because,

[W]hen a plaintiff's claim is liquidated, and proven by an instrument in writing, the
plaintiff may be awarded damages without the necessity of a hearing or the presentation
of evidence.  A claim is liquidated if the amount of damages caused by the defendant can
be accurately calculated from: (1) the factual, as opposed to conclusory, allegations in the
petition, and (2) an instrument in writing.

A default judgment does not establish allegations pertaining to unliquidated damages. If
damages are unliquidated or not proved by an instrument in writing, the court must hear
evidence as to damages before a default judgment may be granted.  Attorney's fees are by
their very nature unliquidated. The reasonableness of attorney's fees, in the absence of a
contract therefore, is a question of fact and is an unliquidated demand for which the trial
court entering a default judgment should hear evidence.

*Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex. App.—Dallas 2009, no pet.) (citations
omitted).  Though the Default Judgment potentially could have supported the application of collateral
estoppel principles given that the state court actually conducted an evidentiary hearing prior to its ruling,
*Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997), the Plaintiff did not
rely upon the application of such principles in its motion.

annum, and court costs.[42]

To date, no objection to the summary judgment motion has been filed by the Defendant nor has he submitted any summary judgment evidence.   Thus, the summary judgment evidence tendered by the Plaintiff stands uncontradicted.

## Discussion

*Summary Judgment Standards and Process*

Plaintiff brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.[43]  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[44]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[45]  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including

---

[42] *Default Judgment* at 2.

[43] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

[44] FED. R. CIV. P. 56(a).

[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[46]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial.  "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[47]

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[48]  "A fact is material only if its resolution

---

[46] FED. R. CIV. P. 56(c)(1).

[47] *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) *(citing Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).  *See also* the provisions of  FED. R. CIV. P. 56(c) which requires a responding party to support any assertion that a fact is in genuine dispute and Rule 56(e) which outlines the court's options for any failure to do so.

would affect the outcome of the action . . . ."[49]  In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[50] or that there is merely "some metaphysical doubt as to the material facts."[51]

Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[52]  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[53]

The record presented is reviewed in the light most favorable to the non-moving party.[54]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[55]  Further, "[o]nly disputes

---

[49] *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[50] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[51] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[52] *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

[53] *Anderson*, 477 U.S. at 248-49 (*citing First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

[54] *Matsushita*, 475 U.S. at 587.

[55] *Id.*

**-14-**

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."[56]  Essentially, if a non-movant fails to set forth

specific facts that present a triable issue on any relevant issues, his claims should not

survive summary judgment.[57]

In addition to the Rule 56 procedures outlined above, Local Rule of Bankruptcy

Procedure 7056 invokes the requirements of Local District Court Rule CV-56 with

reference to the content and determination of summary judgment motions.[58]  That rule, in

relevant part, directs a movant to include a Statement of Undisputed Material Facts and to

support such a statement with "appropriate citations to proper summary judgment

evidence."[59]  It directs a respondent that any response "should be supported by

appropriate citations to proper summary judgment evidence."[60]  With regard to the

disposition of the motion, the rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume
> that the facts as claimed and supported by admissible evidence by the moving

---

[56] *Anderson*, 477 U.S. at 248.

[57] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

[58] Bankr. E.D. Tex. Local R. 7056.

[59] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. Tex. Local R. CV-56(d)).

[60] E.D. Tex. Local R. CV–56(b).

party are admitted to exist without controversy, *except to the extent* that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence.  The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[61]

Yet the Defendant in this instance has filed no response in opposition to the Plaintiff's summary judgment motion nor has the Defendant tendered any responsive summary judgment evidence with regard to the issues raised therein.  The failure of a party to oppose a motion for summary judgment is not singularly sufficient to justify the granting of summary judgment because the court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.[62]

 If that burden is fulfilled, however, the non-movant is "under an obligation to respond  . . .  in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion."[63]  When the moving party carries its

---

[61] E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

[62] *DeOtte v. Azar*, 393 F.Supp.3d 490, 501 (N.D. Tex. 2019) (*citing Day v. Wells Fargo Bank, N.A.*, 768 F.3d 435 (5th Cir. 2014)).

[63] *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1293 n. 11 (5th Cir. 1994); *Rachal v. Select Portfolio Servicing, Inc*., 2018 WL 5724455, at *2 (E.D. Tex. Oct. 5, 2018) ["Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."], *adopted by* 2018 WL 6171793 (E.D. Tex. Nov. 21, 2018).

initial burden and the non-movant fails to respond, a court may accept as undisputed the

material facts set forth in support of the unopposed motion for summary judgment.[64]

Nevertheless, the Plaintiff bears the ultimate burden as to the nondischargeability of the

debt.  Thus, the Plaintiff is entitled to a summary judgment only if there exists no genuine

issue of material fact as to each essential element of the subsection relied upon.

*Analysis*

The summary judgment motion filed by the Plaintiff seeks a judgment as a matter

of law that determines that the debt owed to it by the Defendant should be excepted from

discharge under § 523(a)(2)(A).  11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code

provides that:

> a discharge under § 727 . . . of this title does not discharge an individual
> debtor from any debt for money, property, or services,  . . .  to the extent
> obtained by false pretenses, a false representation, or actual fraud, other
> than a statement respecting the debtor's or an insider's financial condition.

Although other circuits have applied a uniform standard to all § 523(a)(2)(A)

actions,[65] the Fifth Circuit has distinguished the elements of "actual fraud" from those

---

[64]  *Kirwa v. Wells Fargo Bank, N.A.*, 2019 WL 2575058, at *3 (E.D. Tex. June 3, 2019), *adopted by* 2019 WL 2568611 (E.D. Tex. June 20, 2019); E.D. TEX. LOC. R. CV–56(c).

[65]  *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*,

involving "false pretenses and false representations."[66]  The distinction recognized by the

Fifth Circuit appears to be a chronological one, resting upon whether a debtor's

representation is made with reference to a future event, as opposed to a representation

regarding a past or existing fact.[67]  Because the representations allegedly used by the

Defendant to induce the execution of the contract by the Plaintiff pertained to his future

performance, the Plaintiff's nondischargeability action is properly characterized as one

based upon actual fraud in this Circuit.

　　　　To have a debt excepted from discharge pursuant to the "actual fraud" provision in

11 U.S.C. §523(a)(2)(A), an objecting creditor must prove: (1) the Defendant made

representations; (2) at the time they were made the Defendant knew they were false; (3)

---

212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in § 523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

　　[66] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

　　[67] *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) [A debtor's promise . . . related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].  While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement.  *See Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).  In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party."  *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

the Defendant made the representations with the intention and purpose to deceive the

creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor

sustained losses as a proximate result of the representations.[68]

In this instance, several facts are established by the Plaintiff's summary judgment

evidence which, due to the Defendant's failure to respond, are admitted to exist without

controversy.  When those admitted facts, together with the deemed admissions of the

Defendant, are applied to the § 523(a)(2)(A) elements, the debt as established in the State

Court Litigation must be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a

matter of law.  The Defendant induced the Plaintiff to tender the entire contractual amount

of $26,000 at the inception of the contract while never intending to perform all of the

obligations as represented.  After rendering only a small portion of the performance

required in order to earn the full amount of the Plaintiff's deposit, the Defendant made

numerous knowingly false statements to the Plaintiff regarding his activities and fabricated

hindrances which were purportedly precluding his full performance.  The Defendant

knowingly lied to the Plaintiff about ordering the electrical supplies needed to fulfill the

substantial portion of the job.  The Defendant knowingly lied to the Plaintiff about the

purported inability of his supplier to ship the designated materials.  The Defendant failed

---

[68]  *RecoverEdge,* 44 F.3d at 1293, *as modified by the United States Supreme Court decision in Field,* 516 U.S. at 59 [regarding the proper standard of reliance].

to demonstrate that any of the required electrical products had ever, in fact, been ordered. Such false representations were made by the Defendant to the Plaintiff with the intention and purpose to deceive the Plaintiff regarding the disposition of its unearned deposit.  The Defendant failed to segregate the Plaintiff's deposit and, notwithstanding his failure to procure the lighting materials and fulfill his obligations, the Defendant failed upon demand to return the unearned portion of the deposit, but instead used those funds for his own personal purposes.  The Plaintiff justifiably relied upon each of these false statements and, by the time it deduced that the Defendant had absconded with its money without any intention to perform the vast majority of the required work, the Plaintiff had suffered damages by the loss of its remaining deposit.

Accordingly, the Plaintiff has made a *prima facie* showing that it is entitled to a summary judgment against the Defendant to recover its damages as evidenced by the Default Judgment and that such debt should be declared nondischargeable under § 523(a)(2)(A).  The burden therefore shifts to the Defendant under Fed. R. Civ. P. 7056(e) to set forth specific facts demonstrating that there is a genuine issue of material fact for trial or that judgment should not otherwise be entered as a matter of law.[69]  As previously

---

[69]  Fed. R. Civ. P. 56(e), as incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 56, states, in relevant part:

[i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

stated, the Defendant has wholly failed to tender summary judgment evidence or to respond in any manner to the summary judgment motion.  Thus, the material facts as established by the Plaintiff stand undisputed.  Based upon those undisputed facts, the Plaintiff has demonstrated that there exists no genuine issue of material fact as to each element essential to establish that the underlying indebtedness owed to it by the Defendant, as evidenced by the Default Judgment, constitutes a debt for money obtained by actual fraud and that such debt should therefore be declared nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

The United States Supreme Court has stated that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge."[70]  Specifically, "§ 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud."[71]  Further,  with regard

---

(2)  consider the fact undisputed for purposes of the motion;
(3)  grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .

FED. R. CIV. P. 56(e).

[70]   *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).

[71]   *Id*. at 220-21. As previously noted, notwithstanding the Defendant's default in the state court proceeding, the state court conducted a hearing and received evidence to determine the propriety of the unliquidated claims presented by the Plaintiff, including the award of additional damages under the DTPA.

to attorney's fees and accrued interest, "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt.  When the primary debt is nondischargeable . . ., the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable."[72]  Thus, the attorney's fees, treble damages, and post-petition interest awarded to the Plaintiff in the Default Judgment are also rendered nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The Court also concludes that the Plaintiff's recovery of the $350.00 required for the filing of the adversary complaint is proper under 28 U.S.C. § 1920.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the Plaintiff, the material facts admitted to exist without controversy under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities, and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that the debt in the original amount of $66,324.44, plus post-judgment interest on such sums, owed by the Debtor-Defendant, Allen Lynn Davidson, to the Plaintiff, Trans Global Auto Logistics, Inc., as evidenced by that certain Default Judgment signed on September 7, 2017 by the 296th Judicial District Court in and for Collin County, Texas under cause no. 296-02931-2017, and styled *Trans*

---

[72] *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); *see also Snook v. Popiel (In re Snook)*, 168 F. App'x. 577, 578 (5th Cir. 2006); *GT Dave v. Baessler (In re Baessler)*, 589 B.R. 582, 593 (Bankr. W.D. Tex. 2018).

*Global Auto Logistics, Inc. etal. v. Allen L. Davidson, Jr.*[73] *d/b/a Good Guys Remodel,* is hereby determined to be nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).[74]   Court costs incurred in this adversary proceeding in the amount of $350.00 are assessed against the Defendant, Allen Lynn Davidson, in favor of the Plaintiff, Trans Global Auto Logistics, Inc.

An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 01/22/2020

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[73]  The Court simply notes that no such suffix was utilized by the Debtor-Defendant either in his main bankruptcy case nor in this adversary proceeding and the discharge which was entered in the main bankruptcy case was issued to "Allen Lynn Davidson, dba Good Guys Remodel, fdba All Needs Remodeling, fdba Fort Worth Kitchen & Bath."  *See* dkt #20 in case no. 18-40326.

[74]  Accordingly, the Court need not reach the issues and arguments presented with respect to the alleged nondischargeability of this debt under §523(a)(6).